United States District Court
Central District of Illinois

| | |
|---|---|
| Michael Reck<br>    Plaintiff | |
| | Case No. _____ |
| – V – | |
| Western Health Care Unit,<br>Ms. Ashcraft, Ms. Clarkson,<br>Dr. Trusewych, John Doe 1,<br>John Doe 2, Jane Doe(s)<br>    Defendants. | Hon. _____<br>    Judge Presiding |

## Complaint With Jury Demand

This is a Civil Rights action filed by Michael Reck #M40413, a state prisoner at Western Illinois Correctional Center ("Western") for damages under 42 USC 1983 alleging denial of medical care, cruel and unusal punishment, and deliberate indifference in violation of the Eighth Amendment to the United States Constitution. The plaintiff also alleges the state torts of medical malpractise and negligence.

-1-

## Jurisdiction

1. The Court has jurisdiction over the plaintiff's claims of Violations of his Federal Constitional Rights under 42 U.S.C 1331(1) and 1343.

2. The Court has supplemental jurisdiction over plaintiff's state law tort claims under 28 USC. 1367.

## Parties

3. The plaintiff, Michael Reck ("Reck") was incarcerated at Western during the times and events described in this complaint.

4. Defendant, Western HCU, is the Health Care Unit at Western. The Health Care Unit is responsible for providing comprehensive medical and mental health services. The defendant is sued in it's offical capacities.

5. Defendant Ashcraft, is the Health Care Unit ("HCU") Administrator at Western. The HCU Administrator supervises and oversees the operation and activities of the HCU. She is sued in her offical and imdividual capacitres.

6. Defendant, Clarkson, is a Nurse Practioner employed at Western. She is responsible for performing mid-level professional medical services to the offender population under the supervision of the Medical Director/Physican. Additional duties include the ordering of medications for offenders as required and with the approval of the physican. She is sued in her offical and individual capacities

7. Defendant Truseych, MD, is the Medical Director/Physican employed at Western. He is responsible for Examining for assessment of patients for physical therapy. As Medical Director he also provides the overall supervision for clinical services at Western. He is sued in his offical capacity.

8. Defendant John Doe1, is a correctional officer ("C/O") employed at Western, whose name is presently unknown to plaintiff. His duties included supervision in the observation room ("bubble") in 2 house at Western. He is sued in his offical and individual capacity.

-3-

9. Defendant John Doe 2, is a c/o employed at Western, whose duties generally included the supervision of two House, Ewing. He is being sued in his individual capacity.

10. Defendants Jane Doe(s) are Pharmacy Technition(s) employed at Western whose duties generally include ordering medication, prepare medications for delivery to offenders and checking of medication received and verification of medications ordered and notifing the pharmacy of any errors or discrepancies. They are sued in their official and individual capacities.

11. All the defendants have acted, and continue to act, under the color of state law at all times relevent to this complaint.

## Facts

12. Plaintiff's blood pressure was generally under control at Menard Correctional Center ("Menard") in the times from April 2019 until his transfer to Western.

13. Plaintiff was transferred from Menard to Western on Nov. 15, 2021. His Medication Cards were in the control of the HCU at Western, at that time.

14. Plaintiff's medication cards were not found or given to Plaintiff upon arrival.

15. On Dec. 10, 2021, Plaintiff's blood pressure was recorded at 157/100 by the HCU.

16. On Dec. 11, 2021, Plaintiff's blood pressure was recorded at 167/110 at the HCU. His missing medication cards cards from Menard were found on this date.

17. On Feb. 7, 2022, Plaintiff's blood pressure was recorded at 162/102. HCU ordered blood presure checks twice weekly for two weeks.

   a. On Feb. 8, 2022, Plaintiff's blood pressure was recorded at 147/92

   b. On Feb. 25, 2022 Plaintiff's blood pressure was recorded at 132/90.

c. On March 2, 2022, Plaintiff's blood pressure was recorded at 144/99.

d. On March 6, 2022, Plaintiff's blood pressure was recorded at 157/99.

18. On March 6, 2022, Plaintiff sent medication card stickers in for refills, per institutional policy.

19. On March 10, 2022, Plaintiff's blood pressure was recorded at 130/93.

20. On March 23, 2022, Plaintiff's blood pressure was recorded at 148/97. Defendant Clarkson again ordered medication as plaintiff had still not received his refills. Plaintiff showed Clarkson ~~stated~~ his cards empty of medication.

a. On March 25, 2022, Plaintiff' blood pressure was 130/90.

b. On March 29, 2022, Plaintiff's blood pressure was 158/98.

c. On April 1, 2022, Plaintiff's blood pressure was 125/95.

d. On April 8, 2022, Plaintiff's blood pressure was 164/94.

– 6 –

21. In April 2022, Plaintiff still did not get refill cards.

22. In April 2022, Plaintiff sent one or more Kites to the HCU about medication refills. No response received.

23. In April and May 2022, Plaintiff spoke to defendant Clarkson several times regarding refills of his meds.

24. In April 2022, Plaintiff received 2 cards of different medications, each with 16 pills/capsules, Both with no refills.

25. Plaintiff's blood pressure was recorded on May 11, 2022 of 165/122. Plaintiff received a 2 day supply of his blood pressure medication.

26. On May 25, 2022, Plaintiff's cellmate in 2C-34, Joshua Glynn, observed my altered appearance and started pushing the cell's call button for help. No response was received from the bubble (John Doe 1)

27. Glynn and I summoned John Doe 2, on the gallery, and plaintiff explaining his symptoms as best as he could. Plaintiff was feeling like he was in a "fog and numb" in his head.

-7-

28. The c/o, Doe 2, explained "he would not send me to the HCU for just 'a blood pressure check'"

29. Shortly thereafter at lunch, I repeated my symptoms and concern to the South chow hall Leut enant. At once he contacted the HCU and told me to go over immediately. Plaintiff was feeling "foggy minded"

30. Plaintiff's blood pressure upon arrival was 188/125, in the HCU

31. Plaintiff awoke in St. John's Hospital in Springfield, IL. in the ICU a couple days later fully intubated.

32. On June 3, 2022 Plaintiff was released from hospital and admitted into the HCU infirmary with a blood pressure check of 159/106.

## Litigation History

33. Plaintiff has no other lawsuits in federal court dealing with these same facts involved in this case. As in this case in the jurisdiction statement, Plaintiff has enjoined state tort claims in this action

- 8 -

34. Plaintiff has brought other lawsuits in federal court while incarcerated.

    a. Name of Case: Reck v. Wexford, et al.
       Southern District of Illinois, Docket No: 3:16-cv-0141-NJR-DGW
       Seventh Circuit, Docket No: 19-2440

    b. Claim made: Deliberate indifference for lack of
       medical care and cruel and unusal punishment.

    c. Southern District ruled Plaintiff did not
       prove his claims. Plaintiff appealed with court
       upholding Southern District ruling. No further
       appeals made.

Exhaustion of Administrative Remedies

35. There is a grievance procedure at Western. It is listed
    as 20 ILAC 504.800 – 899

36. Plaintiff has filed a grievance concerning the facts relating
    to this complaint. The grievance was number 22-2638

37. Plaintiff's attempt at exhausting his administrative remedies was frustrated by Grievance Officer Mr. Haistings and posible others, See supra below.

38. Plaintiff filed an emergency grievance on May 20, 2022, using DOC 0046 about his issues of not being able to get refills of his blood pressure medications, (See para. 4-25) (Also Exhibit A-1)

39. Grievance was returned to Plaintiff on May 24, 2022 with a Post It note saying to use the correct grievance form; Doc. 0046 Rev 1/2018. (See Exhibit A.1)

40. On June 13, 2022, plaintiff filled an amended grievance again using Doc. 0046. (See Exhibit A.2-1 to A.2-2) grievance from May 20, 2022 attached.

41. On June

41. On June 13, 2022, upon pickup of the grievances in the HCU, Mr. Haistings came to my room in the HCU to tell me that "I needed to use the updated grievance form." I stated that, "There is no rule under DR 504 nor in the Orientation Manual that I received that specifies a specific version of the grievance form be used."

To which Haistings stated, "You're right. You will get your grievances back in three days."

42. On June 16, 2022, plaintiff did receive both grievances back with the Post-It note removed from the May 20 grievance. Both grievances of May 20 and June 13 had no markings of being received nor haveing a counselor' response.

43. Plaintiff filed a second amended grievance on June 16, 2022 using Doc. 0046. (See Exhibit A.3-1 to 3.2) Both the May 20 and June 13 grievances were included.

44. On June 22, 2022, Plaintiff received his May 20 and June 13 grievances back with a memorandum from an unknown Grievance Officer stating to "Use updated 2020 Grievance form." (See Exhibit A.4)

45. On June 23, 2022 plaintiff received a counselling summary that his greivance dated June 16, 2022 was received and assigned the number 22-2638 (See Exhibit A.5)

46. Plaintiff received grievance dated June 16, No. 22-2638 back from CAO saying that the grievance was not substantiated to be an emergency and plaintiff should submit the grievance according to standard grievance procedure, (i.e through counselor's office).

47. On July 13, 2022, plaintiff sent a letter to the Counselor's Office, Attn Counselor Wohfiel, (See Exhibit A.6-1 to 6.3) with a statement of "Please log all these documents as the Counselor Review phase of the process.

48. The letter was put into a correspondence style envelope (See Exhibit A.7) addressed to Counselor Wohfeil on July 14, 2022.

49. Plaintiff received the correspondence envelope (infra) back from Counselor Wohfeil on July 14, 2022. Plaintiff's Letter was marked as seen on Exhibit A.6-3

50. Plaintiff could get any progress on the exhaustion of his administrive remedies. From his initial grievance of 5-20 to his attempt to use the regular method of going through the counselor his efforts were fully frustrated.

51. Plaintiff further attempted to exhaust by sending his grievances (Exhibits A.1 to A.8) to the Administrative Review Board ("ARB") on July 30, 2022. NOTE: Exhibit A.2-2 is simply the reverse of A.2-1. It

52. is unknown why Exhibit A.6-1 was not stamped as received from the ARB. Plaintiff did receive it in the ARB's response.

52. On August 11, 2022, plaintiff received the ARB's response.

53. Exhibit A.7 was not included in plaintiff's appeal to the ARB as he did not consider it to be material for exhaustion.

54. Plaintiff received two responses from the ARB

    a. The first response was for the grievance dated May 20, 2022. The ARB requested responses of the Counselor, Grievance Officer and Chief Administrative Officer ("CAO"). (Exhibit A.9-1)

    b. The second response was for the grievance dated June 13, 2022 stating the same requests (Exhibit A.9-2)

    c. There was no response by the ARB for the grievance No. 22-2638 dated June 16, 2022.

- 13 -

55. Plaintiff efforts to exhaust has been fully obstructed by Grievance Officer Hasting and Counselor Wohlfeil.

Count 1: John Doe1 and John Doe2 failed to act according to their assigned duties.

56. On May 25, 2022, after my cellmate Joshua Glynn starting noticing my altered appearance started pushing the cells' call button to get help.

57. This call button is readily known by inmates to alert the c/o assigned to the bubble.

58. It is readily known that the call buttons are used daily by inmates to be let out of their cells for early dayroom, dayroom, chow, gym, yard, medication lines, sick call passes, library passes, etc.

58. On May 25 however, plaintiff used the call button for his medical emergency. The response over the speakers was "Only use the call button for emergencies!" There is no microphones in the cells for offenders to respond to.

— 14 —

59. Glynn then began to yell and kick the door to get a porter's attention. A porter did arrive and he described my condition and requested immediate help.

60. A c/o arrived, John Doe 2, and I told him my symptoms and that I needed immediate medical help. He replied that he "was not to send me to the HCU for just a blood pressure check!"

61. Shortly thereafter, at lunch, I again reported my symptoms to the chow hall Leutenant. At once he called the HCU and told me to go over immediately

Count II: Wexford HCU, Trusewych, Ashcraft and Clarkson denied Plaintiff of his medication.

62. Defendants Wexford HCU, Trusewych, Ashcraft and Clarkson failed several times to fulfill plaintiff's need to refill his medications properly, (para 14-25) This was a significant contributing cause to plaintiff's stroke on May 25, 2022.

~15~

63. Plaintiff blood pressure still remains abnormally high to the date of filing and placing him at further risk for for futher harms to his heart, also contributes to kidney désease, stroke, blindness, and dementia.

64. Plaintiff's blood pressure was brought under control for many months at Menard before being transfered to Western.

Count III: Defendants, one or more unknown Jane Does, failed to order or provide plaintiff's medications as prescribed.

65. Defendant Clarkson wrote prescriptions on multiple occasions from approximately Mid-April 2022 through end of May 2022.

66. Plaintiff tried on numerous occasions to get his medications refilled but Defendants, one or more Jane Does during the time period of mid-April through end of May 2022, failed to fill and/or distribute them to Plaintiff. Defendants Jane Doe(s) are pharmacy technitions in the HCU.

Count IV: Defendants Wexford HCU and Truseych
did not send plaintiff out for evaluation
for any physical therapy.

67. Upon arrival at Western HCU on June 3, 2022 and
thereafter, no significant evaulation for physical therapy.

68. Sometime thereafter defendant Truseych, was doing his
rounds and performed a one minute evalvation on
defendant and said nothing despite plaintiff's claims
of trouble walking, dizzyness, falling at times, and
remaining troubles with his speech, memory recall and
writting, as well as seizures.

69. Defendant Trusexich would routinly not make his rounds
in the HCU infirmary where plaintiff is housed.

70. Defendant is at risk for further harm from lack of
evaulation and implementation of any physical therapy.
Plaintiff and others are left on their own to rehabilitate
themselves.

71. Plaintiff continues to have the symptoms described above
to this day impacting his daily life.

Relief Requsted

WHEREFORE, plaintiff requests that this court grant the following relief:

A. Award compensatory damages in the following amounts:

1. $5,000 jointly and severaly against the defendants Doe 1 and Doe 2 for failing to respond to plaintiff's obvious emergency medical needs by not following established procedures in violations of deliberate indifference of the Eighth Amendment of the United States Constitution and the torts of negligence under the Law of Illinors.

2. $10,000 jointly and severaly against the defendants Wexford HCU, Trusewych, Ashcraft, and Clarkson for physical and emotionally resulting from their failure to provide plaintiff his much needed medications resulting in the violations of deliberate indifference and cruel and unusual punishment of the Eighth Amendment to the United States Constitution and the torts of neglience and medical malpractice under the Law of Illinois.

3. $2,000 jointly and severaly against defendants Jane Doe(s) for failure to fulfill perscriptions, distribute and ordering medications for Plaintiff resulting in deliberate indifference and cruel and unusal punishment in violation of the Eighth Amendment to the United States Constitution and the torts of medical malpratice and negligence under the Law of Illinois.

4. $3,000 jointly and severally againsts defendants Western HCH and Truseych for pain and suffering following these the Plaintiff's stroke for the failure to evaulate and schedulet physical therapy evaulnation and provide rehabititation in violation of of cruel and unusal punishment of the Eighth Amendment of the United States Constitution and the torts of medical malpractice under the Law of Illinois.

B. Award punitive damages in the following amounts:

1. $6,000 each against defendants Doe 1 and Doe 2

2. $20,000 against defendants Wexford HCU, Trasewych, Ashcraft and Clarkson.

3. $5,000 each against defendants Wexford HCU and Trasewych.

4. $2,000 each against defendants Jane Doe(s)

C. Award courts costs incurred by plaintiff in this action.

Date: April 3, 2023                    Respectively submitted,

/s/ Michael Reck

Michael Reck M40413
Western CC
2500 Route 99 South
Mt. Sterling, IL 62353

- 20 -

United States District Court
Central District of Illinois

Michael Reck
   Plaintiff,

                                        Case No. _____

-V-

                                        Hon. _____
                                        Judge Presiding

Western HCU, et al
   Defendants.

Proof / Certificate of Service

To: Springfield Division
    600 E. Monroe St.
    Room 151
    Springfield, IL 62701

PLEASE TAKE NOTICE that on April 3 , 2023, I placed
the attached or enclosed documents: Profile Information
Form Complaint With Jury Demand, Motion For Filing IFP
to be eFiled at Western Correctional Center.

Dated: April 3 , 2023          /s/ Michael Reck
                                IDOC: M40413
                                Western Illinois CC
                                2500 Route 99 South
                                Mt. Vernon, IL 62353